# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entitled similarly situated,<br><br>    Plaintiff,<br><br> v.<br><br>PALMCO ENERGY PA L.L.C d/b/a INDRA ENERGY, SYNEGENCE, LLC, SHERRIE EDWARDS aka SHERRIE BRYANT aka SHERRIE BRYANT EDWARDS and MATRIX ENERGY GROUP<br><br>    Defendants. | Case No. 2:19-cv-1675-MJH |

## PLAINTIFF'S MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT

## I. INTRODUCTION

Plaintiff Stewart Abramson and Defendant PALMco Energy PA L.L.C. ("Settling Defendant" or "PALMCO") (the Plaintiff and Settling Defendant collectively referred to herein as the "Parties") have reached a class action settlement of this matter.[1]  The Settlement includes the establishment of a $1,000,000 Settlement Fund to be distributed to Settlement Class Members who file a valid claim after payment of notice and administration costs, Plaintiff's Counsel fees, and a Service Payment to the Plaintiff.[2]  There is no reverter of any portion of the Settlement Fund. Notice will be effectuated through e-mail and postcards sent directly to Settlement Class Members

---

[1] PALMCO does not oppose this motion insofar as it supports the settlement, but does not concede or admit Plaintiff's assertions.

[2] All capitalized terms not defined herein have the meanings set forth in the Parties' Settlement Agreement and Release ("Settlement" or "Agreement"), attached as Exhibit 1.

identified in records obtained from Defendant and published through a series of websites that are targeted to the states in which Settling Defendant transacts its energy business. There will also be a Settlement Website through which Claim Forms may be obtained or directly submitted.

The Settlement was reached by counsel with a keen understanding of the merits of the claim and extensive experience in actions brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. The relief provided meets the applicable standards of fairness when taking into consideration the nature of Plaintiff's claims and the risks inherent in class litigation. Accordingly, Plaintiff respectfully requests that the Court: (1) grant preliminary approval of the Settlement; (2) provisionally certify the proposed Settlement Class; (3) appoint Plaintiff's attorneys as Class Counsel; (4) appoint Plaintiff as the representative of the Settlement Class; (5) approve the proposed Notice Plan, Notice, and Claim Forms; and (6) schedule the Final Approval Hearing and related dates as proposed.

## II.    NATURE AND BACKGROUND OF THE CASE

This case rests on alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which prohibits, *inter alia*, initiating any telephone solicitation to a phone using an ATDS or an artificial or prerecorded voice. *See* 47 U.S.C. § 227(b). The TCPA also makes it unlawful to receive more than one telephone call within any twelve-month period by or on behalf of the same entity after placing your number on the National Do Not Call Registry. *See* 47 U.S.C. § 227(c)(5). The TCPA provides a private cause of action to persons who receive such calls. *Id.* and 47 U.S.C. § 227(b)(3).

Plaintiff is a Pennsylvania resident whose telephone numbers have been called with unsolicited messages for years. On December 30, 2019, Plaintiff filed a putative class action

complaint in the United Stated District Court for the Western District of Pennsylvania against Settling Defendant alleging claims for violations of the TCPA.

The Plaintiff later amended his complaint to add Synegence, LLC, Sherrie Edwards a/k/a Sherrie Bryant a/k/a Sherrie Bryant Edwards and Matrix Energy Group (Non-Settling Defendants"). The Complaint alleged that Settling Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA") by, placing unsolicited telemarketing calls to Plaintiff and members of the putative class. Since the filing of the original complaint, the Parties engaged in discovery and other litigation relating to class certification and other issues.  During discovery, the Plaintiff issued multiple subpoenas to third parties and received thousands of pages of documents from Settling Defendant and third parties relating to their policies and procedures for compliance with the TCPA, the overseas calling centers used by the Non-Settling Defendants, the individuals that were called and the relationship between Settling Defendant and the Non-Settling Defendants, as well as the relationship of the Non-Settling Defendant with its overseas calling centers.

The parties mediated this case with Hon. Morton Denlow (Ret.) from JAMS.  While a settlement was not reached during the initial mediation session, it eventually culminated in the Settlement Agreement before this Court.

## III.    THE PROPOSED SETTLEMENT

Pursuant to the Settlement Agreement, Plaintiff seeks certification of the following Settlement Class for settlement purposes only:

> All persons in the United States who were contacted by or on behalf of the Released Parties or its affiliates promoting one or more of the Released Parties that were called with a pre-recorded message, automated dialing system or were called while on the National Do Not Call Registry for at least 30 days from January 1, 2016 through September 17, 2020.

(Agreement ¶ 1.32).  Based on discovery obtained during this litigation, an analysis of the calling data, and the collaborative work of the Parties, they have identified 122,676 Settlement Class Members. These consumers will receive notice via e-mail where available and post-card where their e-mail information is not available. Potential class members who with reasonable diligence could not be identified will receive publication notice.

The proposed Settlement establishes a non-reversionary $1,000,000 Settlement Fund, which will exclusively be used to pay: (1) cash settlement awards to Settlement Class Members; (2) Settlement Administration Expenses; (3) attorney's fees of one-third of the total amount of the Settlement Fund as well as out of pocket expenses, which amounts to $345,000.45, including $12,000.45 in advanced expenses), subject to Court approval; and (4) a court-approved Service Payment to Plaintiff of up to $10,000.  Each Settlement Class Member who submits a valid claim shall be entitled to receive an equal *pro rata* amount of the Settlement Fund after all settlement administrative expenses, Service Payment, and fee awards are paid out of the Settlement Fund. If all the attorneys' fees, expenses, Service Payment, and settlement administration expenses are approved as requested, Plaintiff's counsel estimate that the average Settlement Class Member payment would be approximately $40-80.[3]

### A.    Opt-Out and Objection Procedures

Persons in the Settlement Class will have the opportunity to exclude themselves from the Settlement or object to its approval.  (Agreement ¶ 6).  The procedures and deadlines for filing Requests for Exclusion and objections will be conspicuously listed in the Class Notice and on the Settlement Website.  The Class Notice informs Settlement Class Members that they will have an

---

[3] This assumes that 5-10% of consumers given notice will submit a claim which is consistent with the typical response rate seen in TCPA class settlements of this size.

opportunity to appear and have their objections heard by this Court at a Final Approval Hearing. The Notice also informs Settlement Class Members that they will be bound by the release contained in the Settlement unless they timely exercise their opt-out right. (Agreement ¶ 6.2).

**B.    Release**

The release is appropriately tailored to this case involving violations like those alleged. In exchange for settlement benefits, the Settlement Class Members who do not timely opt out of the Settlement will release Settling Defendant from all claims against the Settling Defendant. The release is limited to claims arising from telemarketing calls that were intended to generate leads for Settling Defendant. (Agreement ¶ 1.26-1.28).

**C.    Class Representative Service Payment**

If approved by the Court, the Plaintiff will receive a Service Payment of $10,000 from the Settlement Fund. This award will compensate Plaintiff for his time and effort and for the risk he undertook in prosecuting this case as well as participating in discovery.

**D.    Attorneys' Fees and Costs**

If the settlement receives preliminary approval, Plaintiff's Counsel will apply to the Court for an award of attorneys' fees in the amount of up to one-third of the total amount of the Settlement Fund in addition to out of pocket expenses of up to $12,000.45. An award of attorneys' fees and costs will compensate Plaintiff's Counsel for the work already performed in relation to the settled claims, as well as the remaining work to be performed in documenting the Settlement, securing Court approval of the Settlement, making sure the Settlement is fairly implemented, and obtaining dismissal of the action.

**E.    Remaining Funds**

Any amount remaining in the Settlement Fund after paying all approved Claim Forms, Settlement Administration Expenses, and any Fee Award and Service Payment will be

distributed to a Court-approved *cy pres* recipient.  The Parties propose National Consumer Law Center as an appropriate recipient.  (Agreement. ¶ 1.10).

## IV.    NOTICE AND SETTLEMENT ADMINISTRATION

Settlement Administration Expenses will be exclusively paid from the Settlement Fund. The Parties have agreed upon, and propose that the Court approve, the nationally recognized class action administration firm KCC Class Acton Services, LLC ("KCC") to be the Settlement Administrator, to implement the Class Notice, and to administer the Settlement, subject to review by counsel and the Court. (Agreement. ¶ 1.31).  KCC estimates the costs to administer the Settlement will be approximately $145,000.

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' right to opt out or object. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 159, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). The mechanics of the notice process are left to the discretion of the court, subject only to the broad "reasonableness" standards imposed by due process.

The proposed notice process more than satisfies all requirements. The Parties have agreed upon a notice process including Email Notice, Postcard Notice, Publication Notice and a Long-Form Notice to be placed on the Settlement Website.  The language of the Email Notice, Postcard Notice, Publication Notice and Long-Form Notice was negotiated and has been agreed to by the Parties. The proposed notices are written in simple terminology and include: (1) a description of the Class; (2) a description of the claims asserted in the class actions; (3) a description of the Settlement; (4) the deadlines for filing a claim form and/or for exercising the right to opt-out (including limitation on the opt-out right); (5) the names of counsel for the Class;

(6) the fairness hearing date; (7) an explanation of eligibility for appearing at the fairness hearing; and (9) the deadline for filing objections to the settlement.

The contents of the proposed notices are more than adequate. They provide Class Members with sufficient information to make an informed and intelligent decision whether to object to the Settlement.  As such, they satisfy the content requirements of Rule 23. *See, e.g., In re Compact Disc Minimum Advertised Price Antitrust Litig.*, 216 F.R.D. 197, 203 (D. Me. 2003) ("notice must describe fairly, accurately and neutrally the claims and parties in the litigation, the terms of the proposed settlement, and the options available to individuals entitled to participate, including the right to exclude themselves from the class").

The dissemination of the notices satisfies all due process requirements.  The Settlement Agreement provides for notice to the Class through email to all Class Members for whom email addresses were obtained in.  In the event an email address is not available for any Class Members, the Settlement Administrator will mail Postcard Notice after attempting to update the last known address of the Class Members through the National Change of Address database.[4] Class Members will then be directed to a website where they can request the delivery of a claim form or where they can file a claim electronically.  The notices will outline the allegations of the case, will advise Class Members of their right to opt out, and will announce the date of the fairness hearing.  In sum, the contents and dissemination of the proposed notice process

---

[4] Attempting to provide notice to as many Class Members as possible via email is particularly practical given the current status of the ongoing pandemic the country is currently experiencing. See, e.g., *Haworth v. New Prime,* Case No. 6:19-03025-CV, 2020 U.S. Dist. LEXIS 67269 (W.D. Mo. April 16, 2020): "The Court is also cognizant of the COVID-19 pandemic and the potential strain a mass mailing could place on the U.S. Postal Service."

constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Rule 23.

## V.    ARGUMENT

### A.    The Class Should Be Preliminarily Certified for Purposes of Settlement

"At the preliminary approval stage, the Court may conditionally certify the class for purposes of providing notice [of a proposed settlement]." *In re Imprelis Herbicide*, No. 11-md-2284, 2013 U.S. Dist. LEXIS 18332, at *8 (E.D. Pa. Feb. 11, 2013) (citing MANUAL FOR COMPLEX LITIGATION, § 21.632 (4th ed. 2004) ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).")). *Accord In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 776-78 (3d Cir. 1995) ("Only when the settlement is about to be finally approved does the court formally certify the class, thus binding the interests of its members by the settlement.").

In the circumstances here, the requirements of Rule 23 are readily met.

### 1.    Rule 23(a)'s Requirements Are Satisfied

FED. R. CIV. P. 23(a) requires that plaintiffs demonstrate the following:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

#### a.    Numerosity

The numerosity requirement is met where the class is so numerous that joinder of all members is impracticable. *Carr v. Flowers Foods, Inc.,* No. 15-cv-6391, 2019 WL 2027299, at *8 (E.D. Pa. May 7, 2019) (finding 4,521 recipients in TCPA action satisfied numerosity). "No

minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001). Numerosity is satisfied here as the Settling Defendant's records indicate that at least 122,676 individuals are in the Settlement Class.

### b.    Commonality

The commonality requirement is met where "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2); *Carr,* 2019 WL 2027299, at *9. "Commonality requires a showing of the existence of questions of law or fact common to the class." *Hawk Valley, Inc. v. Taylor*, 301 F.R.D. 169, 182 (E.D. Pa. 2014) ("A common question is one arising from a common nucleus of operative facts."). "Generally, where defendants have engaged in standardized conduct towards members of the proposed class, common questions of law and fact exist. *Id.* "'[T]he commonality standard of Rule 23(a)(2) is not a high bar: it does not require identical claims or facts among class members.'" *Stewart*, 275 F.3d at 227 (quoting *Chiang v. Veneman*, 385 F.3d 256, 265 (3d Cir. 2004)). "'The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.'" *Id.* (citing *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994)).

Here, the claims asserted by Plaintiff are predicated on allegations that Settling Defendant is vicariously liable for the unlawful telemarketing practices of the vendors it hired, and those vendors made automated calls to Settlement Class Members' telephones. As such, Plaintiff contends that issues of fact and law exist that are common to all Settlement Class Members, such as:

- Whether Settling Defendant is vicariously liable for the conduct of their vendors;

- Whether the calling conducted utilized a "pre-recorded voice" as that term is defined under the TCPA;

- Whether the call recipients had provided their prior express consent prior to being called;

- Whether Settling Defendant's violations were knowing or willful; and

- Whether Settlement Class Members are entitled to statutory damages under the TCPA.

These common questions are wholly sufficient to satisfy the commonality requirement for settlement purposes. *Accord In re Urban Outfitters, Inc., Secs. Litig.*, No. 13-cv-5978, 2016 U.S. Dist. LEXIS 24915, at *3-4 (E.D. Pa. Feb. 29, 2016) (preliminarily certifying class action).

### c.    Typicality

Rule 23(a)(3) requires that the claims of the class representative are "typical of the claims … of the class." "The typicality requirement 'is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals.'" *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531 (3d Cir. 2004) (citation omitted). As the Third Circuit has held, "'[t]he concepts of commonality and typicality are broadly defined and tend to merge.'" *Baby Neal*, 43 F.3d at 56 (citation omitted). "In this respect 'the commonality and typicality requirements both seek to ensure that the interests of the absentees will be adequately represented.'" *Chakejian v. Equifax Info. Servs. LLC*, 256 F.R.D. 492, 498 (E.D. Pa. 2009) (quoting *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 311 (3d Cir. 1998)). "'[C]ases challenging the same unlawful conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement irrespective of the varying fact patterns underlying the individual claims.'" *Barel v.*

*Bank of Am.*, 255 F.R.D. 393, 398 (E.D. Pa. 2009) (quoting *Stewart v. Abraham*, 275 F.3d at 227).

Here, typicality is met as Plaintiff's claim is that Settling Defendant's vendors improperly engaged in automated telemarketing to contact Settlement Class Members' telephones without obtaining prior express consent and made repeated telemarketing calls to telephone numbers listed on the National Do Not Call List and is thus liable for statutory damages under the TCPA. *Accord Gehrich v. Chase Bank U.S.*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) (TCPA case; "The proposed class also satisfies commonality and typicality. Each class member suffered roughly the same alleged injury: receipt of at least one phone call … from [defendant] to her cell phone."); *Grannan v. Alliant Law Group, P.C.*, No. 10-cv-02803 HRL, 2012 U.S. Dist. LEXIS 8101, at *11 (N.D. Cal. Jan. 24, 2012) ("The claims of the Named Plaintiff are typical of the Settlement Class, and arise out of the TCPA violations committed by defendant Alliant.").

For settlement purposes, Plaintiff is typical of the absent Settlement Class Members because he was allegedly subjected to the same Settling Defendant practices, he suffered from the same injuries, and because both Plaintiff and the Settlement Class will benefit from the relief provided by the Settlement.

### d.    Adequacy of Representation

"[T]he adequacy of representation requirement of Rule 23(a)(4) 'considers whether the named plaintiffs' interests are sufficiently aligned with the absentees', and it tests the qualifications of the counsel to represent the class.'" *Cosgrove v. Citizens Auto. Fin., Inc.*, No. 09-cv-1095, 2011 U.S. Dist. LEXIS 95656, at *11 (E.D. Pa. Aug. 25, 2011) (quoting *In re Community Bank of N. Va.*, 418 F.3d 277, 303 (3d Cir. 2005)). This requirement "has two components": "[f]irst, the adequacy inquiry tests the qualifications of the counsel to represent the class"; and, "[s]econd, it seeks to uncover conflicts of interest between named parties and the

class they seek to represent." *Carr*, 2019 WL 2027299, at \*10 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 532).

"A class representative is adequate if: (1) the class representative's counsel is competent to conduct a class action; and (2) the class representative's interests are not antagonistic to the class's interests." *In re Ravisent Techs., Inc. Secs. Litig.*, No. 00-cv-1014, 2005 U.S. Dist. LEXIS 6680, at \*16 (E.D. Pa. Apr. 18, 2005) (quoting *In re GMC Pick-Up Truck*, 55 F.3d at 800-01).

Here, there is nothing to suggest that Plaintiff has interests antagonistic to those of the Settlement Class Members. Plaintiff's interest in maximizing a recovery for the Settlement Class is aligned with the interests of Settlement Class Members generally. Plaintiff has obtained an advantageous Settlement that treats all Settlement Class Members in the same fashion and provides real value to all claimants. Moreover, Plaintiff's Counsel have substantial experience in litigating consumer class actions and other complex commercial cases. *See* Exhibit 1, Declaration of Class Counsel. Plaintiff and his counsel have, and will continue, to zealously represent the interests of the proposed Settlement Class.

2.    **Rule 23(b)(3)'s Requirements Are Satisfied**

The Settlement Class also satisfies FED. R. CIV. P. 23(b)(3), which requires that the court find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

a.    **Predominance**

The Rule 23(b)(3) predominance inquiry "measures whether the class is sufficiently cohesive to warrant certification." *Newton v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 187 (3d Cir. 2001) (citing *Amchem Prods., Inc., v. Windsor*, 521 U.S. 591, 623

(1997)).  [T]he predominance inquiry focuses a common course of conduct by which the defendant may have injured class members."  *Barel v. Bank of Am.*, 255 F.R.D. at 399 (citing *In re Prudential Ins.*, 148 F.3d at 314).  For example, in *Barel*, involving consumer claims under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq.* ("FCRA"), the court found predominance satisfied where the defendant was alleged to have engaged "in a common course of conduct" and where "all class members, by definition, were subjected to the same practices." *Id.* at 399 ("The predominating, indeed the dispositive, issue is whether Defendant willfully violated the FCRA by obtaining consumer reports of non-customers.").

        In this case, common legal issues predominate.  All claims arise under the TCPA and seek statutory damages.  The calls to all class members promoted Settling Defendant and are identified in the records.  Whether or not the technology used to call class members implicates the TCPA is a common question of fact and law that relates to all class members.  Whether Settling Defendant would be vicariously liable for the calling conduct will not cause predominance issues as the conduct as it relates to class members is identical for purposes of an agency analysis.

        Frequently in TCPA cases, defendants attempt to show that class members provided prior express written consent to receive telemarketing calls, and that determining the validity of such consent requires consumer by consumer factual "mini-trials."  Here, even though prior express written consent is undisputedly an affirmative defense, the Plaintiff can attack any asserted consent defense using common proof.  *See Stern v. Docircle, Inc.,* No. SACV 12-2005 AG (JPRx), 2014 U.S. Dist. LEXIS 17949 *20 (C.D. Cal. Jan. 29, 2014) (granting TCPA class certification and noting that consent defenses do not defeat predominance where consent will be proved or disproved on evidence and theories applicable to the entire class); *Van Patten v.*

*Vertical Fitness Group, LLC,* No. 12cv1614-LAB (MDD), 2013 U.S. Dist. LEXIS 189845 *16-18 (S.D. Cal. Nov. 8, 2013) (granting TCPA class certification and explaining that where consent defenses are subject to common proof individual issues do not predominate over common ones).

### b.    Superiority

The other requirement of Rule 23(b)(3) is the superiority requirement, *i.e.*, that a class action suit provides the best way of managing and adjudicating the claims at issue.  "The superiority requirement 'asks the court to balance, in terms of fairness and efficiency, the merits of a class action against those of alternative available methods of adjudication.'"  *Good v. Nationwide Credit, Inc.*, No. 14-cv-4295, 2016 U.S. Dist. LEXIS 32154, at *22 (E.D. Pa. Mar. 14, 2016) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 533-34).  "When assessing superiority and '[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, ... for the proposal is that there be no trial.'"  *Id.* at *23 (quoting *Amchem Prods., Inc., v. Windsor*, 521 U.S. at 620).

Here, the Settlement provides redress for Settlement Class Members who individually may have potential damages of several thousand dollars at most and who thus are economically foreclosed from otherwise pursuing any relief.  Notably, the TCPA does not allow for the recovery of attorneys' fees.  To the extent Settlement Class Members did pursue litigation outside of the class context, the Settlement would avoid potential individual cases that could be filed by the thousands of Settlement Class Members for the same claims asserted here.

Unsurprisingly, courts routinely find class actions to be the superior method of adjudicating claims in the TCPA context.  *See, e.g., Sandusky Wellness Ctr., LLC v. Wagner Wellness, Inc.,* No. 3.12 CV 2257, 2014 U.S. Dist. LEXIS 166275, 14-15 (N.D. Ohio Dec. 1, 2014) ("This type of case weighs in favor of the class action as a superior device.  Under the

TCPA, the maximum recovery for each class member is $1,500, and it does not allow for fee shifting.  Hence, individual class members are unlikely to litigate TCPA claims.").  As one federal court found while certifying a TCPA case:

> Jurists and commentators have long debated the merits of the modern class action and the public policies behind Rule 23…It is the view of this Court that the instant case highlights one of the strongest justifications for the class action device: its regulatory function…A statute such as the TCPA, which provides for a relatively small recovery for individual violations but is designed to deter conduct directed against a large number of individuals, can be effectively enforced only if consumers have available a mechanism that makes it economically feasible to bring their claims. Without the prospect of a class action suit, corporations balancing the costs and benefits of violating the TCPA are unlikely to be deterred because individual claims will not impose the level of liability that would outweigh the potential benefits of violating the statute.

*Bee, Denning, Inc. v. Capital Alliance Group*, No. 13-cv-2654- BAS-WVG, 2015 U.S. Dist. LEXIS 129495, 37-38 (S.D. Cal. Sept. 24, 2015).  The proposed class meets the superiority requirement of Rule 23(b)(3).

### B.    Preliminary Approval of the Proposed Settlement Is Warranted

The settlement of a class action requires court approval.  FED. R. CIV. P. 23(e)(2). Review of a proposed class action settlement typically proceeds in two stages. At the first stage, the parties submit the proposed settlement to the court, which must make a preliminary fairness evaluation.  If the proposed settlement is preliminarily acceptable, the court then directs that notice be provided to all class members who would be bound by the proposed settlement in order to afford them an opportunity to be heard on, object to, or opt out of the settlement.  *See* FED. R. CIV. P. 23(c)(3), (e)(1), (e)(5).  At the second stage, after class members are notified of the settlement, the court holds a formal fairness hearing.  *See* FED. R. CIV. P. 23(e)(1)(B). If the court concludes that the settlement is "fair, reasonable and adequate," the settlement is

given final approval.  FED. R. CIV. P. 23(e)(2).  *See In re Nat'l Football League Players'*
*Concussion Injury Litig.*, 301 F.R.D. 191, 197 (E.D. Pa. 2014).

Plaintiff now seeks preliminary approval of the settlement pursuant to Rule 23(e).  "The
preliminary determination establishes an initial presumption of fairness."  *In re Gen. Motors*
*Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995).  Under
Rule 23, a settlement falls within  the "range of possible  approval" if there is  a conceivable
basis for presuming that the standard applied for final approval-fairness, adequacy, and
reasonableness- will be satisfied.  *Id.*  In making a preliminary determination, the Court should
look to whether there are any obvious deficiencies that would cast doubt on the proposed
settlement's fairness.  The Court should also consider whether the  negotiations occurred at
arm's length, whether  there  was significant  investigation  of Plaintiff's  claims,  and  whether
the  proposed  settlement  provides unwarranted preferential treatment to certain class members.
*Id.* (citing *In re Linerboard Antitrust Litig.*, 292 F. Supp. 2d 631, 638 (E.D. Pa. 2003)).

The Third Circuit has long recognized that there is a "strong presumption in favor of
voluntary settlement agreements."  *Ehrheart v. Verizon Wireless*, 609 F.3d 590, 594 (3d Cir.
2010) (citing *Pennwalt Corp. v. Plough*, 676 F.2d 77, 79-80 (3d Cir. 1982)).  "This policy is
also evident in the Federal Rules of Civil Procedure and the District Court's Local Rules, which
encourage facilitating the settlement of cases." *Id.* "This presumption is especially strong in
'class actions and other complex cases where substantial judicial resources can be conserved by
avoiding formal litigation.'"  *Id.* at 595 (quoting *In re GMC Pick-Up Truck*, 55 F.3d at 784).
"Settlement agreements are to be encouraged because they promote the amicable resolution of
disputes and lighten the increasing load of litigation faced by the federal courts." *Id.*  In

addition, "the parties may also gain significantly from avoiding the costs and risks of a lengthy and complex trial." *Id.*

In determining whether class action settlements should be approved, "[c]ourts judge the fairness of a proposed compromise by weighing the plaintiff's likelihood of success on the merits against the amount and form of the relief offered in the settlement. [Citation omitted] … They do not decide the merits of the case or resolve unsettled legal questions." *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n.14 (1981). The settlement is well within "the range of possible approval" and should be preliminarily approved in all respects.

The Parties have designed a very simple claim process in an order to maximize the number of Settlement Class Members who submit claims. The Parties will provide claim forms that require minimal confirmatory information relating to the telephone numbers and calls received by Class Members. Providing easily accessible methods to submit the claim forms both electronically and by mail will likely result in the typical response rate for a TCPA settlement class of this size which is in the five to ten percent range. As a result, the Settlement Fund would provide an amount of between $83 and $166 per Class Member before any amounts for administration expenses, attorneys' fees and costs, and a service award. Assuming the amounts that will likely be requested for those amounts is granted by the Court, the net amount to be distributed per Class Member will be $40 to $80.

The Settlement was achieved only after utilizing the efforts of an experienced and sophisticated mediator in Hon. Morton Denlow (Ret.) of JAMS, formerly of the United States District Court for the Northern District of Illinois, who has helped resolve numerous TCPA class actions. Class Counsel also reviewed and analyzed an extensive production of in excess of 4,000 pages of documents and nearly 1.4 gigabytes before finalizing the Settlement. The value of the

Settlement is squarely in line with other TCPA settlements. For example, in *Vasco v. Power Home Remodeling Group LLC*, No. 15-cv-4623, 2016 U.S. Dist. LEXIS 141044 (E.D. Pa. Oct. 12, 2016), the Court approved a TCPA class action settlement that provided for payments of $27 per claimant. There, the court found that "[t]his amount is consistent with other class action settlements under the Act." *Id.* at *23 (citing, *e.g.*, *Kolinek v. Walgreen Co.*, No. 13-cv-4806, 2015 WL 7450759, at *7 (N.D. Ill. Nov. 23, 2015) ($30); *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) ($34.60); *Rose v. Bank of Am. Corp.*, No. 11-cv-02390-EJD, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) ($20 to $40)).

Similarly, in *Gehrich*, 316 F.R.D. 215, another court approved a TCPA class action settlement. There, the court found that while "[t]he theoretical recovery per [class] member is about $1.00," "[t]he actual recovery per claimant is approximately $52.50." *Id.* at 23. Although "that recovery is well below the $500 statutory recovery available for each call," the court found that "the recovery falls well within the range of recoveries in other recent TCPA class actions." *Id.* As the court in *Gehrich* held, "'[t]he essential point here is that the court should not 'reject[]' a settlement 'solely because it does not provide a complete victory to plaintiffs,' for 'the essence of settlement is compromise.'" *Id.* (quoting *Isby v. Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996)). "An acceptable settlement is properly 'a bilateral exchange ... where both sides gain as well as lose something.'" *Id.* (quoting *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1135 (7th Cir. 1979)). Moreover, the *Gehrich* court reasoned:

> Individual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation. [Defendant], for its part, buys peace and mitigates risk. However improbable it may be, complete victory for Plaintiffs at $500 or $1,500 per class member could bankrupt [the defendant]. Even assuming (conservatively and

> unrealistically) only one violation per class member, if Plaintiffs won a complete victory, [defendant] Chase would owe $16.1 billion, and $48.4 billion if the jury found that Chase's violations were knowing or willful. A $52.50 recovery in the hand is better than a $500 or $1,500 recovery that must be chased through the bankruptcy courts.

*Id.* at 228.

While Settling Defendant has agreed to settle, it was not without significant defenses. As an initial matter, to transform this case from a case worth a few thousand dollars a class must be certified and class certification is also far from automatic in TCPA cases. *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 WL 4627386, at *1 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation); *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action) *and Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508, 527 (E.D. Wis. 2014) (same), *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 WL 6106714 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) *and Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

Even if the class were certified, the Plaintiff would still have a substantial obstacle regarding Settling Defendant's vicarious liability for the conduct of its vendors. The Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663, 193 L. Ed. 2d 571 (2016), held traditional agency and vicarious liability principles are required in order to be found liable under the TCPA. However, Settling Defendant did not have contractual privity with the entity that physically initiated the calls to the Plaintiff, which would make such a finding more difficult. *See, e.g., Cunningham v. Capital Advance Sols., LLC*, No. 17-13050 (FLW), 2018 U.S. Dist. LEXIS 197590 (D.N.J. Nov. 20, 2018). In fact, other district courts in the Third Circuit have

entered summary judgment in favor of TCPA defendants in such a situation. *See Klein v. Just Energy Grp., Inc.,* No. 14-1050, 2016 U.S. Dist. LEXIS 84447, at *43 (W.D. Pa. June 29, 2016) ("In sum, the evidence adduced in this case is not sufficient to support a finding by a reasonable jury that Collectcents was acting as an agent (whether under actual authority, apparent authority or ratification theories) for any of the Just Energy Defendants in making any of the calls.").

In addition, at least some courts view awards of aggregate, statutory damages with skepticism and reduce such awards—even after a plaintiff has prevailed on the merits—on due process grounds. *See, e.g., Aliano v. Joe Caputo & Sons – Algonquin, Inc.*, No. 09-910, 2011 WL 1706061, at *4 (N.D. Ill. May 5, 2011) ("[T]he Court cannot fathom how the minimum statutory damages award for willful FACTA violations in this case — between $100 and $1,000 per violation — would not violate Defendant's due process rights …. Such an award, although authorized by statute, would be shocking, grossly excessive, and punitive in nature."); *but see Phillips Randolph Enters., LLC v. Rice Fields*, No. 06-4968, 2007 WL 129052, at *3 (N.D. Ill. Jan. 11, 2007) ("Contrary to [defendant's] implicit position, the Due Process clause of the 5th Amendment does not impose upon Congress an obligation to make illegal behavior affordable, particularly for multiple violations.").

Moreover, the narrative of the Settling Defendant's telemarketing compliance efforts could present a case for reduction of any damages awarded after trial and some courts have applied this principle in the TCPA context. For example, the Court explained in *Golan v. Veritas Entm't, LLC* before reducing the damages awarded in that TCPA class action lawsuit to $10 a call:

> Three courts have reduced damages awards in TCPA cases. In *Texas v. American Blastfax, Incorporated*, plaintiff, the state of Texas, brought suit against defendants, American Blastfax, Incorporated and two of its officers and directors. 164 F.Supp.2d 892, 894 (W.D. Tex.

2001). The district court held defendant Blastfax had violated the TCPA by sending unsolicited intrastate fax advertisements. *Id.* at 894…The district court found a reasonable award was seven cents per violation, which it trebled because defendants' conduct was willful and knowing, for a total amount of $495,375…

The next case which reduced damages for TCPA violations is *Maryland v. Universal Elections, Incorporated*, 862 F.Supp.2d 457 (D. Md. 2012). The state of Maryland brought a civil enforcement action against Universal Actions, Incorporated and two individuals, alleging defendants violated the TCPA by making 112,000 prerecorded telephone calls to residents on Election Day. *Id.* at 459. The district court found defendants violated the TCPA. *Id.* at 463-464. The base damages award could have been $34,000,000 and could have exceeded one hundred million dollars if trebled, because the violations were knowing. *Id.* at 464. The state of Maryland requested $10,424,550. *Id.* at 465. The district court awarded $1,000,000. *Id.* at 466. The district court reasoned "a $10 million penalty is disproportionate to the size of the company and the defendants' presumptive ability to pay." *Id.*

The third case is *United States v. Dish Network, LLC*, No. 09-3073, 256 F. Supp. 3d 810, 2017 U.S. Dist. LEXIS 85543, 2017 WL 2427297 (C.D. Ill. Jun. 5, 2017). Plaintiffs, the United States and the States of California, Illinois, North Carolina, and Ohio, alleged defendant, Dish Network, LLC, violated the TCPA, as well as several state laws and regulations, by placing telephone calls to telephone numbers on the do-not-call list. 2017 U.S. Dist. LEXIS 85543, [WL]at *1. After a bench trial, the Central District of Illinois entered judgment in favor of the plaintiffs and against the defendant. *Id.* Plaintiffs asked for a damages award of $2.1 billion. 2017 U.S. Dist. LEXIS 85543, [WL] at *139. The district court awarded civil penalties and statutory damages of $280,000,000, approximately 20 percent of the defendant's after-tax profits for 2016, finding this amount was "appropriate and constitutionally proportionate, reasonable, and consistent with due process." *Id.* The district court further reasoned "[t]he amount represents a significant penalty for the millions and millions of Do-Not-Call violations caused by Dish over years and years of careless and reckless conduct." *Id.* Finally, the district court stated "[t]he injury to consumers, the disregard for the law, and the steadfast refusal to accept responsibility require a significant and substantial monetary award."

*Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 144501, at *6-9

(E.D. Mo. Sept. 7, 2017).

By reaching this Settlement, the parties will avoid protracted litigation and will establish a means for prompt resolution of Class Members' claims against Settling Defendant. These avenues of relief provide a benefit to Class Members. Given the alternative of long and complex litigation before this Court, the risks involved in such litigation, the Settling Defendant's financial position, and the possibility of further appellate litigation, the availability of prompt relief under the Settlement is highly beneficial to the Class.  Moreover, given the current COVID-19 pandemic and the financial stress and uncertainty it is causing so many individuals, the importance of prompt relief for the Class Members is heightened in the current environment.

### C.    The Form and Method of Notice Should Be Approved

"Federal Rule of Civil Procedure 23 requires a district court approving a class action settlement to 'direct notice in a reasonable manner to all class members who would be bound by the proposal.'"  *In re DVI, Inc. Secs. Litig.*, No. 03-5336, 2016 U.S. Dist. LEXIS 40473, at *22-23 (E.D. Pa. Mar. 28, 2016) (quoting FED. R. CIV. P. 23(e)(1)).  "Whereas 'the Rule provides broad discretion to district courts with respect to the notice's form and content, it must satisfy the requirements of due process.'"  *Id.* at *23 (quoting *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 (3d Cir. 2013)).  "Generally, 'there has been a failure of due process only in those cases where it cannot be said that the procedure adopted, fairly insures the protection of the interests of absent parties who are to be bound by it.'"  *Id.* (quoting *In re Diet Drugs Prods. Liab. Litig.*, 431 F.3d 141, 145 (3d Cir. 2005)).

### 1.    The Form of Notice Is Appropriate

"First, Rule 23(c)(2)(B) requires that class members be given the best notice practicable under the circumstances, including individual notice to all potential class members identifiable through reasonable efforts.  Specifically, the Rule provides that such notice must, in clear, concise, and plain language, state: (i) the nature of the action; (ii) the definition of the class

certified; (iii) the class claims, issues, or defenses; (iv) the class member's right to enter an appearance by an attorney; (v) the class member's right to be excluded from the class; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of settlement on class members." *Good v. Nationwide Credit, Inc.*, No. 14-4295, 2016 U.S. Dist. LEXIS 32154, at *25-26 (E.D. Pa. Mar. 14, 2016) (citing FED. R. CIV. P. 23(c)(2)(B)). "Second, Rule 23(e) requires notification to all members of the class of the terms of any proposed settlement.  FED. R.CIV. P. 23(e).  This 'notice is designed to summarize the litigation and the settlement' and 'to apprise class members of the right and opportunity to inspect the complete settlement documents, papers, and pleadings filed in the litigation.'" *Id.* (citing *In re Prudential Ins.*, 148 F.3d at 327).

Here, the proposed notices, including the Email Notice, the Postcard Notice, the Publication Notice and the Long-Form Notice on the Settlement Website, provide detailed information about the Settlement, including: (1) a comprehensive summary of its terms; (2) Class Counsel's intent to request attorneys' fees, reimbursement of costs and expenses, and an incentive award for the Plaintiff; and (3) detailed information about the Released Claims.  (*See* Agreement, ¶ 4, Exhibits 2-5).  In addition, the notices provide information about the Final Approval Hearing date, the right of Settlement Class Members to seek exclusion from the Settlement Class or to object to the proposed Settlement (as well as the deadlines and procedure for doing so), and the procedure to receive additional information.  *Id.*  In short, the notices are intended to fully inform Settlement Class Members of the lawsuit, the proposed Settlement, and the information they need to make informed decisions about their rights.

### 2.    The Method of Notice Comports with Due Process and Is Reasonable

"'[T]o satisfy due process, notice to class members must be reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them

an opportunity to present their objections.'"  *Glaberson v. Comcast Corp.*, No. 03-6604, 2014

U.S. Dist. LEXIS 172040, at *18 (E.D. Pa. Dec. 12, 2014) (quoting *In re Ikon Office Solutions,*

*Inc. Secs. Litig.*, 194 F.R.D. 166, 174 (E.D. Pa. 2000)).  "Individual notice should be provided to

all members who can be identified through reasonable efforts."  *Id.*

Direct Notice will be sent to each Settlement Class Member located in Settling

Defendant's business records.  An Email Notice will be sent to each Settlement Class Member

for whom an email address was included in the Class List or for whom an email address is

maintained.  Postcard Notice will be mailed to any Settlement Class Members for whom an

email address cannot be identified.  Prior to mailing, the Settlement Administrator will attempt to

update the last known address of the Class Members through the National Change of Address

database.  In addition, the Settlement Administrator will implement a broad-based 70% reach

plan via digital media, spreading over 100 million internet impressions targeted by state-of-the-

art  mechanisms at likely class members spanning the states in which Settling Defendant did

business (Delaware, District of Columbia, Illinois, Maryland, Massachusetts, New Jersey, New

York, Ohio, Pennsylvania, and Virginia. The digital media activity will be distributed across two

of the most prestigious and effective digital advertising networks available, the Google Display

Network and Facebook. The ads will draw class members' attention, and upon being clicked,

deliver the user to the settlement website, where they may find applicable information and file

claims as appropriate.

Accordingly, the proposed form and manner of notice are reasonable and adequate, in

accord with due process and Rule 23, and should be approved.

## VII.    SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final

approval hearing date, dates for mailing and publication of the Notice, and deadlines for filing

claims, objecting to the Settlement, opting out of the Class, and filing papers in support of the

Settlement.  The Parties propose the following schedule:

| | |
|---|---|
| Last day for the Settlement Administrator to publish the Settlement Website and begin operating a toll-free telephone line, email address, and P.O. Box to accept inquiries from Settlement Class Members | On or before 30 days after entry of this Order |
| Settlement Administrator provides Postcard Notice to Settlement Class Members | On or before 30 days after entry of this Order |
| Last day for Settlement Class Members to file Claim Forms, object, or request exclusion from the Settlement Class | On or before 90 days after entry of this Order |
| Last day for Settlement Class Counsel to file motion in support of Final Approval | On or before 14 days before Final Approval Hearing |

## VI.    CONCLUSION

For the reasons set forth above and the entire record in this litigation, the Settlement

warrants this Court's preliminary approval, and Plaintiff's Counsel respectfully requests that the

motion be granted.  Along with this memorandum, counsel will submit a Draft Preliminary

Approval Order, attached as Exhibit 3.

Respectfully submitted,

*/s/ Anthony I. Paronich*
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on September 30, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

*/s/ Anthony I. Paronich*
Anthony I. Paronich