**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| STEWART ABRAMSON, individually and on behalf of a class of all persons and entitled similarly situated, | Case No. 2:19-cv-1675-MJH |
| Plaintiff, | Judge Marilyn J. Horan |
| v. | |
| PALMCO ENERGY PA L.L.C d/b/a INDRA ENERGY, SYNEGENCE, LLC, SHERRIE EDWARDS aka SHERRIE BRYANT aka SHERRIE BRYANT EDWARDS and MATRIX ENERGY GROUP | |
| Defendants. | |

**PLAINTIFF'S MOTION FOR FINAL APPROVAL OF A CLASS**
**ACTION SETTLEMENT AND INCORPORATED MEMORANDUM IN SUPPORT**

# Table of Contents

I.   INTRODUCTION ................................................................................................1

II.  NATURE AND BACKGROUND OF THE CASE .............................................2

III. THE PROPOSED SETTLEMENT ...................................................................3
   A.   THE SETTLEMENT CLASS ..................................................................3
   B.   SETTLEMENT RELIEF ..........................................................................3
      1.   Class Member Relief: Settlement Fund.............................................3
      2.   Class Representative Service Payment ..............................................4
      3.   Attorney's Fees and Costs..................................................................4
      4.   Remaining Funds ...............................................................................4
   C.   CLASS MEMBERS WERE SENT PROPER NOTICE............................5
   D.   OPT-OUTS AND OBJECTIONS .............................................................7
   E.   RELEASE ..................................................................................................7

IV.  ARGUMENT......................................................................................................7
   A.   THE SETTLEMENT APPROVAL PROCESS .........................................7

B.   THE CRITERIA FOR FINAL APPROVAL ARE SATISFIED.......................8

1.   COMPLEXITY, EXPENSE, AND LIKELY DURATION OF THE LITIGATION .....................8

2.   THE REACTION OF THE CLASS TO THE SETTLEMENT ........................................10

3.   THE STAGE OF PROCEEDINGS AND THE AMOUNT OF DISCOVERY COMPLETED ..10

4.   THE RISKS OF ESTABLISHING LIABILITY AND DAMAGES....................................11

5.   RISKS OF MAINTAINING CLASS ACTION STATUS THROUGH TRIAL..........................13

6.   ABILITY TO WITHSTAND A GREATER JUDGMENT ...............................................14

7.   THE RANGE OF REASONABLENESS OF THE SETTLEMENT FUND IN LIGHT OF THE BEST POSSIBLE RECOVERY AND ALL THE ATTENDANT RISKS OF LITIGATION...........15

8.   THE PROPOSAL WAS NEGOTIATED AT ARM'S LENGTH........................................16

9.   THE ATTORNEYS FEES REQUESTED ARE REASONABLE AS IS THE INCENTIVE AWARD.........................................................................................................17
   A.   Class Counsel Are Entitled to a Fee Award from the Common Fund...........................17
   B.   The Requested Fee of One-Third Is Fair and Reasonable ..................................18

10.  THE PLAINTIFF'S REQUESTED INCENTIVE AWARD SHOULD BE APPROVED.......21

V.   CONCLUSION.................................................................................................23

# Table of Authorities

## CASES

)); *In re Gen. Instrument Secs. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) ........................ 20

*Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1224-25 (3d Cir. 1995). ................................. 21

*also In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 299 (3d  Cir. 2005) ...................... 8

*also In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 438 (D.N.J. 2004 ....................... 14

*Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997). ................................................. 13

*Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) .......................................................... 18

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). ................................................. 17

*Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 340 (E.D. Pa. 2007) ............. 21

*Bredbenner v. Liberty Travel, Inc.*, No. 09-cv- 905, 2011 U.S. Dist. LEXIS 38663, at *63-64 (D.N.J. Apr. 8, 2011)). ................................................. 22

*Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004). ........................... 13

*Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 U.S. Dist. LEXIS 35421, at *17-20 (N.D. Ill. Mar. 23, 2015) ....................... 22

*Cubbage v. Talbots, Inc.*, No. 09-cv-00911-BHS (W.D. Wash. Nov. 5, 2012) ........................ 16

*Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000). ......................... 14

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 159, 173 (1974). ............................................ 5

*Estrada v. iYogi, Inc.*, No. 2:13-01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015). .................................................. 16

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) .................... 14

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); ...................................................... 8

*Goldschmidt v. Rack Room Shoes, Inc.*, No. 1:18-cv-21220-KMW (S.D. Fla. 2019). ................ 16

*Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000); ..................... 19

*Hopkins v. Modernize Inc.*, No. 4:17-cv-40087-TSH (D. Ma. Oct. 9, 2019) ...................... 15

*In re AT&T Corp. Sec. Litig.*, 455 F.3d 160 (3d Cir. 2006). .......................................... 10

*In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) .................. 16

*In re Cendant Corp. Litig.,* 264 F.3d 201, 233 (3d Cir. 2001) .......................................... 8

*In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009) (...................................... 19

*In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 747 (E.D. Pa. 2013). ................................... 19

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 822 (3rd Cir. 1995) ....................................................................... 20

*In re GMC Pick-Up Truck Fuel Tank Prods.  Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) .......... 8, 10

*In re Ikon Office Sols.,* 194 F.R.D. 166, 194 (E.D. Pa. 2000)). .................................................... 21

*In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 281 (3d Cir. 2009)....................................... 20

*In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-md-02261 (S.D. Cal. Feb. 20, 2013) ................................................................................... 16

*In re Linerboard Antitrust Litig.*, No. 1261, 2004 U.S. Dist. LEXIS 10532, at *47 (E.D. Pa. June 2, 2004). .............................................................. 21

*In re Prudential Ins. Co. Am. Sales Practice  Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998 ................................................................ 10

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998)). ............................................................... 19

*In re Rite Aid*, 396 F.3d 294, 304 (3d Cir. 2005). ...................................................................... 20

*In re ViroPharma Inc. Secs. Litig.*, No. 12-cv-2714, 2016 U.S. Dist. LEXIS 8626, at *24 (E.D. Pa. Jan. 25, 2016) ......................................................... 17

*Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV- 00130-PJK-RHS, 2015 U.S. Dist. LEXIS 137209, at *5 (D.N.M. Sept. 23, 2015) .................................................... 22

*Kolinek v. Walgreen Co.*, No. 13-cv-4806, 2015 WL 7450759, at *7 (N.D. Ill. Nov. 23, 2015........................................................................... 15

*Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880, 883–84 (3d Cir. 2016) ................................................................... 20

*Lightspeed Media  Corp. v. Smith*, 761 F.3d 699, 704 (7th Cir. 2014), ........................................ 5

*Manoucherhi v. Styles for Less, Inc.,* Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016)....................................................... 16

*Marengo v. Miami Resch. Assocs., LLC*, No. 1:17-cv-20459-KMW (S.D. Fla. July 20, 2018) ..................................................................... 15

*Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at
  \*4 (N.D. Ga. Jan. 30, 2017 ........................................................................ 16

*Med. Mut. of Ohio v. Smithkline Beecham Corp.*, 291 F.R.D. 93, 105 (E.D. Pa. 2013).............. 21

*Mohamed v. Off Lease Only, Inc.,* No. 1:15-cv-23352-MGC (S.D. Fla. 2019).......................... 16

*Moore v. Comcast Corp.*, No. 08-cv-773, 2011 U.S. Dist. LEXIS 6929, at \*12 (E.D.
  Pa. Jan. 24, 2011). ................................................................................... 19

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950)..................................... 5

*Petruzzi's Inc. v. Darling-Delaware Co.*, 983 F. Supp. 595, 603 (M.D. Pa. 1996)...................... 17

*Poirier v. CubaMaxTravel, Inc.,* No. 1:18-cv-23240-CMA (S.D. Fla. 2018) ............................ 16

*Prudential Ins.*, 148 F.3d at 319 ..................................................................... 10

*Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D.
  237, 250 (1985)....................................................................................... 17

*Rose v. Bank of Am. Corp.*, No. 11-cv-02390- EJD, 2014 U.S. Dist. LEXIS 121641, at
  \*30 (N.D. Cal. Aug. 29, 2014)........................................................................ 16

*Saini v. BMW of N. Am., LLC*, No. 12-cv-6105 (CCC), 2015 U.S. Dist. LEXIS 66242,
  at \*41 (D.N.J. May 21, 2015) ........................................................................ 19

*Schely v. Verde Energy USA, Inc.,* No. 2:17-cv-00887-WB (E.D. Pa. May 19, 2020) ............... 15

*See In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 962 F. Supp. 450, 510
  (D.N.J. 1997), *aff'd*, 148  F.3d 283, 317 (3d Cir. 1998).................................................. 8

*See Krakauer v. Dish Network, L.L.C.*, Civil Action No. 1:14-CV-333 (M.D. N.C.
  2017) ................................................................................................. 9

*Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 421 (E.D. Pa. 2010)....................... 20

*Sprague v. Ticonic Nat'l. Bank*, 307 U.S. 161 (1939) .................................................. 18

*Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, 2014 WL 1309352, at \*6 (N.D.
  Cal. Mar. 10, 2014) ................................................................................... 16

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 334 n.65 (3d Cir. 2011)................................... 21

*Tavares v. S-L Distribution Co.*, No. 1:13-CV-1313, 2016 WL 1743268, at \*15 (M.D.
  Pa. May 2, 2016)...................................................................................... 21

*United States Air Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010)..................................... 5

*Vasco v. Power Home Remodeling Group LLC*, No. 15-cv-4623, 2016 U.S. Dist.
   LEXIS 141044 (E.D. Pa. Oct. 12, 2016) ........................................................ 15

*Wijesinha v. Susan B. Anthony List, Inc.*, No. 1:18-cv-22880-JEM (S.D. Fla. 2019) ................. 16

**STATUTES**

47 U.S.C. § 227 ................................................................................................................ 7

47 U.S.C. § 227(b) ........................................................................................................... 8

47 U.S.C. § 227(b)(3). ..................................................................................................... 8

47 U.S.C. § 227(c)(5) ....................................................................................................... 8

**RULES**

Rule 23(C)(2) ................................................................................................................... 16

Rule 23(e)(2)(B) ............................................................................................................... 22

Rule 23(e)(2)(C) .......................................................................................................... 20, 21

Rule 23(e)(2)(D) ............................................................................................................... 22

**TREATISES**

H. NEWBERG, ATTORNEY FEE AWARDS § 2.01 at 28-29 (1986). ................................. 23

## I.    INTRODUCTION

Plaintiff Stewart Abramson ("Plaintiff") and Defendant PALMco Energy PA L.L.C. ("Settling Defendant" or "PALMCO")  (the Plaintiff and Settling Defendant collectively referred to herein as  the "Parties") have negotiated, and the Court preliminarily approved on October 2 2020, a class action settlement of this Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, case.  (Doc. 50.)  A copy of the Settlement is on file with the Court. (Doc. 49-1.)  The Settlement requires the establishment of a $1,000,000 Settlement Fund to be distributed *pro rata* to Settlement Class Members who file a valid claim after payment of notice and administration costs (if approved), Plaintiff's Counsel fees and costs (if approved), and an Incentive Award to the Plaintiff (if approved).[1]  There is no reverter in the Settlement Fund. If the settlement receives approval, Claimants will each receive a cash payment from this fund of a minimum of $596.36 and Claimants who were contacted on two different telephone numbers will receive $1,192.72. *See* Exhibit 1, Declaration  of Settlement Administrator, Jay Geraci ("KCC Decl.") ¶ 17. This per claim payment amount far exceeds other TCPA class action settlements approved by courts in this Circuit and elsewhere.

The Parties' Settlement Agreement is now subject to final approval by the Court. In accordance with the Court's Preliminary Approval Order, Notice was sent via e-mail or first class mail to 137,855 Settlement Class Members advising them of the proposed settlement. *See* KCC Decl. at ¶ 6-8. Settlement Class Members also received robust publication notice. *Id.* at ¶¶ 11-12.

Notably, there were *no objections* to the settlement and only five class members requesting exclusion. *Id.* at ¶¶ 12-13. Following direct notice under the Class Action Fairness

---

[1] All capitalized terms not defined herein have the meanings set forth in the Parties' Settlement Agreement ("Settlement" or "Agreement").

Act, 28 U.S.C. § 1715, to each state attorney general's office, no state attorney general, nor the Attorney General of the United States, has objected. In contrast, 832 class members took the time to file a claim.

The Settlement Agreement reflects a compromise of the Parties' positions for the purpose of resolving, without further litigation, all issues and claims relating to the allegations made in this Action on behalf of all members of the Class. As demonstrated below, the Settlement negotiated by the Parties is fair, adequate, and reasonable, and provides a substantial benefit to the Settlement Class.

## II.     NATURE AND BACKGROUND OF THE CASE

This case rests on alleged violations of the TCPA, which prohibits, *inter alia*, initiating any telephone solicitation to a phone using an ATDS or an artificial or prerecorded voice. *See* 47 U.S.C. § 227(b).  The TCPA also makes it unlawful to receive more than one telephone call within any twelve-month period by or on behalf of the same entity after placing your number on the National Do Not Call Registry.  *See* 47 U.S.C. § 227(c)(5).  The TCPA provides a private cause of action to persons who receive such calls.  *Id.* and 47 U.S.C. § 227(b)(3).

Plaintiff is a Pennsylvania resident whose telephone numbers have been called with unsolicited messages for years. *See* <u>Exhibit 2</u>, Declaration of Anthony I. Paronich at ¶ 7. On December 30, 2019, Plaintiff filed a putative class action complaint in the United Stated District Court for the Western District of Pennsylvania against Settling Defendant alleging claims for violations of the TCPA. *Id.* at ¶ 8.

The Plaintiff later amended his complaint to add Synegence, LLC, Sherrie Edwards a/k/a Sherrie Bryant a/k/a Sherrie Bryant Edwards and Matrix Energy Group (Non-Settling Defendants"). *Id.* at ¶ 9.  The Complaint alleged that Settling Defendant violated the TCPA by placing unsolicited telemarketing calls to Plaintiff and members of the putative class. Since the

filing of the original complaint, the Parties engaged in discovery and other litigation relating to

class certification and other issues. *Id.* at ¶ 10. During discovery, the Plaintiff issued multiple

subpoenas to third parties and received thousands of pages of documents from Settling

Defendant and third parties relating to their policies and procedures for compliance with the

TCPA, the overseas calling centers used by the Non-Settling Defendants, the individuals that

were called and the relationship between Settling Defendant and the Non-Settling Defendants, as

well as the relationship of the Non-Settling Defendant with its overseas calling centers. *Id.* at ¶

11.

The parties mediated this case with Hon. Morton Denlow (Ret.) from JAMS. *Id.* at ¶ 12.

While a settlement was not reached during the initial mediation session, it eventually culminated

in the Settlement Agreement before this Court. *Id.*

## III.   THE PROPOSED SETTLEMENT

### A.   THE SETTLEMENT CLASS

Pursuant to the Settlement Agreement, Plaintiff seek certification of the following

Settlement Class for settlement purposes only:

> All persons in the United States who were contacted by or on behalf of the Released
> Parties or its affiliates promoting one or more of the Released Parties that were
> called with a pre-recorded message, automated dialing system or were called while
> on the National Do Not Call Registry for at least 30 days from January 1, 2016
> through September 17, 2020.

(Agreement ¶ 1.32).

### B.   SETTLEMENT RELIEF

#### 1.   Class Member Relief: Settlement Fund

The proposed Settlement establishes a non-reversionary $1,000,000 Settlement Fund. If

all the attorney's fees, expenses, Service Payment, and Settlement Administration Expenses are

approved as requested, the administrator states

There is no reverter in the Settlement Fund. The Claimants will each receive a cash payment from this fund of a minimum of $596.36 and Settlement Class Members who were contacted on two different telephone numbers will receive $1,192.72. *See* KCC Decl. at ¶ 17.

### 2.     Class Representative Service Payment

If approved by the Court, the Plaintiff will receive a Service Payment of $10,000 from the Settlement Fund.  As discussed in more detail below, this award will compensate Plaintiff for his time and effort and for the risk he undertook in prosecuting this case as well as participating in discovery.

### 3.     Attorney's Fees and Costs

Plaintiff's Counsel are applying to the Court for an award of attorneys' fees in the amount of up to one-third of the total amount of the Settlement Fund in addition to out of pocket expenses of up to $12,000.45.  An award of attorneys' fees and costs will compensate Plaintiff's Counsel for the work already performed in relation to the settled claims, as well as the remaining work to be performed in documenting the Settlement, securing Court approval of the Settlement, making sure the Settlement is fairly implemented, and obtaining dismissal of the action.

### 4.     Remaining Funds

Any amount remaining in the Settlement Fund after paying all approved Claim Forms, Settlement Administration Expenses, and any Fee Award and Service Payment will be distributed to a Court-approved *cy pres* recipient.  The Parties propose National Consumer Law Center as an appropriate recipient.  (Agreement. ¶ 1.10).

NCLC has submitted a declaration, which is attached as <u>Exhibit 3</u>, in support of their nomination as an appropriate recipient of any uncashed checks from class members that are not administratively feasible to distribute. In that declaration, Richard DuBois, the Executive Director of NCLC, states:

> NCLC is a 501(c)(3) nonprofit organization dedicated to consumer protection and the promotion of fairness and justice in the marketplace…
>
> NCLC's legal and policy experts analyze regulatory proposals; provide expert witness services; and research and write extensive Reports, Policy Briefs, and formal regulatory comments on a wide range of consumer law matters, including on (but not limited to) issues associated with the Telephone Consumer Protection Act (TCPA)…
>
> NCLC is widely seen as the leading consumer voice and the expert on TCPA matters pending before both the FCC and Congress. Our recognized expertise in TCPA issues has made NCLC one of the national leaders and, as a result, NCLC has made comments to the FCC on every major, and many minor, proceedings, rulemakings and requests for exemptions under the TCPA that have come up since late 2014.

*Id.* at ¶¶ 3, 8-9. The affidavit also identifies several other TCPA class actions where NCLC has been appointed as the *cy pres* recipient.

## C.   CLASS MEMBERS WERE SENT PROPER NOTICE

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, of the proposed settlement, and of the class members' right to opt out or object.  *Eisen v. Carlisle & Jacquelin*, 417 U.S. 159, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).  Rule 23(e)(1) requires the court to "direct notice in a reasonable manner to all class  members who would be bound by" a proposed settlement. Fed. R. Civ. P. 23(e)(1). The best practicable notice is that which is  "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency  of the action and afford them an opportunity to present their objections." *Lightspeed Media  Corp. v. Smith*, 761 F.3d 699, 704 (7th Cir. 2014), citing *United States Air Funds, Inc. v. Espinosa*, 559 U.S. 260, 272 (2010). The notice process that was successfully implemented in this case more than satisfied all requirements.

The Settlement Administrator caused the notice to be sent in a number of ways, as directed by the Court's Preliminary Approval Order. First, on October 30, 2020, the Settlement

Administrator e-mailed 137,862 e-mail notices to Class Members. KCC Dec. at ¶ 7. On

November 3, 2020, KCC determined that 103,376 emails were sent successfully without a

notification and 34,486 emails failed to be delivered successfully, however, KCC determined

that 34,479 of the 34,486 Class Members whose email failed had a name and mailing address

available. *Id.* at ¶ 8. On November 27, 2020, KCC printed and mailed a Notice packet to the

34,479 names and mailing addresses in the Class List. *Id.* at ¶ 9. On December 3, 2020, KCC

sent a remainder E-Mail Notice to 103,085 Class Members who had a valid email address that

had not yet filed a claim. *Id.* at ¶ 10.

As directed by the Court's Preliminary Approval Order, KCC also implemented a

publication notice campaign. KCC purchased 106,820,000 million impressions to be distributed

via the Google Display Network and the social media platform, Facebook. *Id.* at ¶ 11. The

impressions were geographically targeted to adults in Delaware, District of Columbia, Illinois,

Maryland, Massachusetts, New Jersey, New York, Ohio, Pennsylvania and Virginia. *Id.* These

states were selected because these are the states that the Defendant offers their services in. The

impressions appeared on mobile and desktop devices from October 30, 2020 through December

29, 2020. *Id.*

On October 29, 2020, KCC also established a website

www.PALMcoTCPAsettlement.com dedicated to this matter to provide information to the Class

Members and to answer frequently asked questions.  The website URL was set forth in the Email

Notice, Postcard Notice, Opt-Out Form and Claim Form.  Visitors of the website can download

copies of the Notice, Long Form Notice, Claim Form, Opt-Out Form, review other case-related

documents, and file an online claim. *Id.* The website has received 29,739 visits. *Id.* KCC has also

established a case specific telephone hotline, which has received 245 calls. *Id*. at ¶ 13.  The

Notice Plan constituted the best notice practicable   under the circumstances, provided due and

sufficient notice to the Settlement Class, and fully   satisfied the requirements of due process and

Federal Rule of Civil Procedure 23. Subject to this Court's approval, Administration Expenses of

$142,856.32 will be paid from the Settlement Fund.  KCC Dec. ¶ 18.

## D.     OPT-OUTS AND OBJECTIONS

Settlement Class Members were given the opportunity to opt out of or object to approval

in accordance with the Settlement Agreement. In total, only five Settlement Class Member opted

out and there were no objections. KCC Dec. ¶ 15-16.

## E.     RELEASE

The release is appropriately tailored to this case involving violations like those alleged. In

exchange for settlement benefits, the Settlement Class Members who do not timely opt out of the

Settlement will release Settling Defendant from all claims against the Settling Defendant.  The

release is limited to claims arising from telemarketing calls that were intended to generate leads

for Settling Defendant. (Agreement ¶ 1.26-1.28).

## IV.     ARGUMENT

## A.     THE SETTLEMENT APPROVAL PROCESS

A court may approve a class action settlement if it is "fair, reasonable, and adequate."

Fed. R. Civ. P. 23(e)(2). "If the proposed settlement appears to be the product of serious,

informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant

preferential treatment to class representatives or segments of the class, and falls within the range

of possible approval, then the court should direct that the notice be given to the class members of

a formal fairness hearing." Manual For Complex Litigation (Second), § 30.44 (1985).

In addition, the Third Circuit has a strong judicial policy that encourages class settlements

especially those that are the product of arm's length negotiations. *See In re Prudential Ins. Co. of*

*Am. Sales Practices Litig.*, 148 F.3d 283, 317 (3d Cir. 1998); *see also In re Cmty. Bank of N.*

*Virginia*, 418 F.3d 277, 299 (3d Cir. 2005) ("all Federal Circuits recognize the utility of …

'settlement classes' as a means to facilitate the settlement of complex nationwide class actions")

(quotation and citation omitted).

**B.      THE CRITERIA FOR FINAL APPROVAL ARE SATISFIED**

The Third Circuit has adopted a nine-factor test to determine whether a settlement is "fair,

reasonable, and adequate" and should be finally approved. The elements of this test—known as

the "*Girsh* factors"—are:

> (1) the complexity and duration of the litigation; (2) the reaction
> of the class to the settlement; (3) the stage of the proceedings; (4) the
> risks of establishing liability; (5) the risks of establishing damages;
> (6) the risks of maintaining a class action; (7) the ability of the
> defendants to withstand a greater judgment; (8) the range of
> reasonableness of the settlement in light of the best recovery; and
> (9) the range of reasonableness of the settlement in light of all the
> attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975); *In re GMC Pick-Up Truck Fuel Tank Prods.*

*Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) (*citing Girsh*, 521 F.2d at 157).

As summarized below, these factors, as well as the factors contained in Rule 23(e)(2),

demonstrate that this Settlement should be finally approved.

**1.      Complexity, Expense, and Likely Duration of the Litigation**

The first *Girsh* factor "captures the probable costs, in both time and money, of continued

litigation." *In re Cendant Corp. Litig.,* 264 F.3d 201, 233 (3d Cir. 2001) (internal citation and

quotation marks omitted). "By measuring the costs of continuing on the adversarial path, a court

can gauge the benefit of settling the claim amicably." *GM Trucks*, 55 F.3d at 812. This factor

undoubtedly weighs in favor of the Settlement here. In this litigation, the path from this point to a

final judgment would be long and expensive. After discovery was completed, the Parties would

have had to brief class certification,   and the Court would have been forced to decide the strongly

contested issue of whether a basis  exists to certify a class for the purpose of establishing liability.

If the Court determined that  certification was warranted, then PALMCO presumably would have

immediately exercised its right to seek interlocutory review of that certification order. If the

certification order was upheld,  additional discovery would have been taken (with attendant

discovery-related motion practice).   Thereafter, dispositive motions would have been filed by one

or both of the Parties, and the Court would have been forced to adjudicate those motions, with

additional appellate practice if   such dispositive motions resulted in either entry of final judgment

or a basis for interlocutory  review. Depending on how the Third Circuit resolved any such

appeals, the case might ultimately have gone to trial.  Post-trial motions and additional appeals

would have likely  followed.

In fact, one of Class Counsel was involved in one of the only TCPA  class actions to go

through trial, and the amount of work done after class certification and  through trial that would

have resulted here is indicated in the work done in that case. *See Krakauer v. Dish Network,

L.L.C*., Civil Action No. 1:14-CV-333 (M.D. N.C. 2017) (more than  45 motions after a class

certification decision through the time of trial with more than 10 motions after trial and two

appeals).  That case remains on appeal for several years after the initial trial was completed. In

short, litigating this action would have proved lengthy,   complex and expensive, thereby delaying

(and potentially dissipating) any benefits that might   have been obtainable by Settlement Class

Members. *See* Paronich Declaration at ¶ 13. The proposed Settlement permits the Court   and the

Parties to avoid this significant expenditure of time and resources. This factor strongly  favors

preliminary approval of the proposed Settlement.

    2.       **The Reaction of the Class to the Settlement**

The second *Girsh* factor "attempts to gauge whether members of the class support the settlement." *In re Prudential Ins. Co. Am. Sales Practice  Litig. Agent Actions*, 148 F.3d 283, 318 (3d Cir. 1998). Here, *none* of the Settlement Class Members have objected to any aspect of the Settlement. *See In re AT&T Corp. Sec. Litig.,* 455 F.3d 160 (3d Cir. 2006) (district court did not abuse discretion in finding that second factor weighed strongly in favor of approval where there were 8 objections). Furthermore, only five class members have opted out. This is in comparison to the more than eight hundred class members that have filed claims. The positive response of the Class weighs in favor of approval.

    3.       **The Stage of Proceedings and the Amount of Discovery Completed**

The third *Girsh* factor "captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *See GM Trucks*, 55 F.3d at 813.

This inquiry has two aspects: legal and factual. *Prudential Ins.*, 148 F.3d at 319. The first aspect is easily satisfied in this case, where the Parties engaged in extensive negotiations and related legal analysis with the help of an experienced mediator with a robust background of dealing with this type  of case. *See* Paronich Declaration at ¶ 14. As a result, Class Counsel has a more than adequate appreciation of the legal merits of  the case.

The same is true from a factual perspective, which involves "an inquiry into the type  and amount of discovery the parties have undertaken." *Prudential Ins.*, 148 F.3d at 319. Here, the Plaintiff: completed discovery on PALMCO regarding their potential vicarious liability, issued third party discovery for PALMCO's non-exclusive agents and the vendors, sub-vendors and call

centers used by those agents. The Plaintiff received thousands of pages of documents relating to the relationship between these parties, calls made, and policies and procedures for compliance with the TCPA. *See* Paronich Declaration at ¶ 15.

Class Counsel  has a thorough appreciation of the facts—good and bad—which bear upon the merits of the  claims in this litigation. In view of the foregoing, this factor strongly favors approval of the  proposed Settlement.

### 4.       The Risks of Establishing Liability and Damages

As to the fourth *Girsch* factor, as well as factor (C)(i) of Rule 23(C)(2) ("the costs, risks, and delay of trial and appeal"): "[b]y evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had  class counsel elected to litigate the claims rather than settle them." *GM Trucks*, 55 F.3d at 814. As to the risks of establishing damages: "Like the fourth factor, this inquiry  attempts to measure the expected value of litigating the action rather than settling it at the current  time." *In re Cendant Corp. Litig.*, 264 F.3d 201, 238-39 (3d Cir. 2001) (internal citation and  quotation marks omitted).

Plaintiff believes that the claims against PALMCO would be successful at trial. Nevertheless,   these claims would face several difficult challenges if the litigation were to continue. If this  Action proceeds, based on their experience with other TCPA actions and the specifics of this   Action, Class Counsel expects that PALMCO will aggressively raise multiple issues.

First, when the Settlement Agreement was negotiated, the constitutionality of the TCPA was being reviewed by the Supreme Court in *Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159 (4th Cir. 2019) (*Barr v. Am. Ass'n of Political Consultants, Inc.*, No. 19- 631 (petition for cert filed Nov. 14, 2019)).  Class certification is also far from automatic in TCPA

cases.  *Compare Tomeo v. CitiGroup, Inc.*, No. 13 C 4046, 2018 U.S. Dist. LEXIS 166117, at *3 (N.D. Ill. Sept. 27, 2018) (denying class certification in TCPA case after nearly five years of hard-fought discovery and litigation), *Jamison v. First Credit Servs.*, 290 F.R.D. 92, 107 (N.D. Ill. 2013) (finding issues of consent to predominate in TCPA action *with Saf-T-Gard Int'l v. Vanguard Energy Servs.*, No. 12-3671, 2012 U.S. Dist. LEXIS 174222 (N.D. Ill. Dec. 6, 2012) (certifying a class in a TCPA action and finding no evidence supported the view that issues of consent would be individualized) and *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 253 (N.D. Ill. 2014) (same).

Even if the class were certified, the Plaintiff would still have a substantial obstacle regarding PALMCO's vicarious liability for the alleged conduct of the vendors.  The Supreme Court in *Campbell-Ewald Co. v. Gomez*, 136 S.Ct. 663 (2016), held traditional agency and vicarious liability principles are required in order to be found liable under the TCPA. Here, it is undisputed that PALMCO did not contact the Plaintiff. Instead, the vendors of PALMCO would often hire call centers and sub-call centers that sold energy leads to multiple companies on a non-exclusive basis. In other words, in order to prove PALMCO's liability, the Plaintiff would have to establish an agency relationship between PALMCO and a caller that was at least three degrees of separation from their company. *See* Paronich Declaration at ¶ 16.

While the Plaintiff was confident that it would ultimately prevail, this Action would continue to be heavily litigated. As with  any litigation, there are risks inherent in continuing to litigate, but considering that Plaintiff obtained by settlement much of the relief sought in the litigation, it is in the Class's best  interest to accept the relief provided in the Settlement now rather than to spend hundreds of  thousands of dollars in fees and years of time in an attempt to obtain a marginally better result  through litigation.

**5.      Risks of Maintaining Class Action Status Through Trial**

Because "the prospects for obtaining certification have a great impact on the range of recovery one can expect to reap from the class action," *GM Trucks*, 55 F.3d at 817, the court must measure the likelihood of obtaining and maintaining a certified class if the action were to proceed to trial. *Girsh*, 521 F.2d at 157. While, for the reasons stated above, Plaintiff firmly believes that this case is appropriate for class action treatment and, regardless of any settlement, it is undeniable that class certification for settlement purposes removes some of the hurdles upon which some courts have denied certification of a litigation class. For example, manageability is not a concern with settlement classes. *Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997).

What is certain is that any decision granting certification absent settlement would be subjected to the cost, delay, and the uncertainty of a Rule 23(f) appellate challenge, before the class could proceed to trial; and an appeal from any verdict or judgment in favor of the class would likewise follow. If a class could not be certified here, it would leave few, if any, class members with both the resources and financial incentive to chase a maximum $500 award for each statutory violation on their own, with the practical result of no recovery by anyone. *See Carnegie v. Household Int'l, Inc.,* 376 F.3d 656, 661 (7th Cir. 2004) ("The *realistic* alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30.") (emphasis in original). The proposed Settlement provides a remedy now  to all Settlement Class Members, rather than risking an uncertain result after years of expensive litigation.

### 6.      Ability to Withstand a Greater Judgment

The sixth *Girsh* factor considers "whether the defendants could withstand a judgment for an amount significantly greater than the [s]ettlement" *Cendant*, 264 F.3d at 240. This factor is particularly relevant here.

In a TCPA case such as this, the potential damages could bankrupt PALMCO.  Unlike a large public company with extensive financial resources, PALMCO is a regional, privately-held company.  As one court acknowledged in approving a TCPA settlement:

> Individual class members receive less than the maximum value of their TCPA claims, but they receive a payout without having suffered anything beyond a few unwanted calls or texts, they receive it (reasonably) quickly, and they receive it without the time, expense, and uncertainty of litigation....  *[C]omplete victory for Plaintiff at $500 or $1,500 per class member could bankrupt [the defendant]....  [The] recovery in the hand is better than a $500 or $1,500 recovery that must be chased through the bankruptcy courts.*

*Gehrich v. Chase Bank USA, N.A.*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) (emphasis added); *see also In re Lucent Techs., Inc. Sec. Litig.*, 327 F. Supp. 2d 426, 438 (D.N.J. 2004) ("[T]he risk of nonpayment is 'acute' where a defendant lacks 'significant unencumbered hard assets against which Plaintiff could levy had a judgment been obtained.'") (quoting *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 150 (E.D. Pa. 2000)).

The typical risks of nonpayment are accentuated in the current economic client where the country is facing the COVID-19 pandemic and the accompanying financial stress that is affecting nearly every business and individual in some form or fashion. More specific to PALMCO, as part of the mediation process, financial documents were provided and reviewed. *See* Paronich Decl. at ¶ 17.

The uncertainty created by this environment makes the certainty created the Settlement achieved by Plaintiff's Counsel even more valuable and prudent for the Class.  This factor weighs heavily in favor of approval.

### 7.    The Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All the Attendant Risks of Litigation

The last two *Girsh* factors are usually considered together. They ask "whether the settlement is reasonable in light of the best possible recovery and the risks the parties would face if the case went to trial." *Prudential Ins.*, 148 F.3d at 322. As Judge Becker explained in *GM Trucks*, "[t]he evaluating court must ... guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution." 55 F.3d at 806. These factors overlap with Rule 23(e)(2)(C) (relief provided by the settlement is adequate, taking into account risks, distribution method, and attorneys' fees).

As explained above, the Settlement amount here is reasonable relative to the claims asserted and the risks inherent in bringing those claims to a successful judgment after trial. The Settlement amount and minimum payment of $596.36 is well above other TCPA settlements approved across the country, including against some of the biggest companies in the country, as demonstrated by the chart below:

| Case Name | Claimant Amount |
|---|---|
| *Schely v. Verde Energy USA, Inc.,* No. 2:17-cv-00887-WB (E.D. Pa. May 19, 2020) | $100.00 cash |
| *Hopkins v. Modernize Inc.,* No. 4:17-cv-40087-TSH (D. Ma. Oct. 9, 2019) | $26.00 cash |
| *Marengo v. Miami Resch. Assocs., LLC*, No. 1:17-cv-20459-KMW (S.D. Fla. July 20, 2018) | $130.00 cash |
| *Vasco v. Power Home Remodeling Group LLC*, No. 15-cv-4623, 2016 U.S. Dist. LEXIS 141044 (E.D. Pa. Oct. 12, 2016) | $27.00 cash |
| *Kolinek v. Walgreen Co.*, No. 13-cv-4806, 2015 WL 7450759, at *7 (N.D. Ill. Nov. 23, 2015) | $30.00 cash |

| | |
|---|---|
| *In re Capital One TCPA Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) | $39.66 cash |
| *Rose v. Bank of Am. Corp.*, No. 11-cv-02390- EJD, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) | $40.00 cash |
| *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118, 2014 WL 1309352, at *6 (N.D. Cal. Mar. 10, 2014) | $46.98 cash |
| *Markos v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01156-LMM, 2017 WL 416425, at *4 (N.D. Ga. Jan. 30, 2017) | $24.00 cash |
| *Manoucherhi v. Styles for Less, Inc.*, Case No. 14cv2521 NLS, 2016 WL 3387473, at *2, 5 (S.D. Cal. June 20, 2016) | $10.00 cash (or $15.00 voucher) |
| *In re Jiffy Lube Int'l, Inc. Text Spam Litig.*, No. 3:11-md-02261 (S.D. Cal. Feb. 20, 2013) | $12.97 cash (or $17.29 voucher) |
| *Estrada v. iYogi, Inc.*, No. 2:13-01989 WBS CKD, 2015 WL 5895942, at *7 (E.D. Cal. Oct. 6, 2015) | $40.00 cash |
| *Cubbage v. Talbots, Inc.*, No. 09-cv-00911-BHS (W.D. Wash. Nov. 5, 2012) | $40.00 cash (or $80.00 voucher) |
| *Wijesinha v. Susan B. Anthony List, Inc.*, No. 1:18-cv-22880-JEM (S.D. Fla. 2019) | $5.00 cash |
| *Goldschmidt v. Rack Room Shoes, Inc.*, No. 1:18-cv-21220-KMW (S.D. Fla. 2019) | $5.00 cash (and $10.00 voucher) |
| *Poirier v. CubaMaxTravel, Inc.*, No. 1:18-cv-23240-CMA (S.D. Fla. 2018) | $7.00 cash |
| *Mohamed v. Off Lease Only, Inc.*, No. 1:15-cv-23352-MGC (S.D. Fla. 2019) | $50.00 cash |

And the proposed method of distributing relief and processing claims is effective and  equitable. Rule 23(e)(2)(C). To participate in the Settlement, Settlement Class Members were  only required to submit a simple claim form. Payments to claimants will be sent after final approval, and all claimants will receive an equal amount. *See* Rule 23(e)(2)(D) ("the proposal treats class members equitably relative to each other").

### 8.     The Proposal Was Negotiated at Arm's Length

Rule 23(e)(2)(B) instructs the court to consider whether the proposed settlement was negotiated at arm's length. Here, the Parties reached the Settlement following a formal mediation session with a highly respected, independent mediator, Hon. Morton Denlow of JAMS.  Prior to their session, the Parties prepared memoranda and exchanged  information relevant to settlement negotiations. The negotiations were substantive and included extensive  discussions about the

merits of the claims and the financial condition of the company. "The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties." *In re ViroPharma Inc. Secs. Litig.*, No. 12-cv-2714, 2016 U.S. Dist. LEXIS 8626, at *24 (E.D. Pa. Jan. 25, 2016) (citation omitted). As such, the "arm's-length negotiation" factor of Rule 23(e)(2)(B) weighs in favor of preliminary approval.

9.    **The Attorneys Fees Requested are Reasonable as is the Incentive Award**

Class Counsel have requested an award of one-third of the common fund created in addition to out-of-pocket costs. The Plaintiff have also requested an incentive award of $10,000. There has been no objection to either request, which is well supported.

A.    **Class Counsel Are Entitled to a Fee Award from the Common Fund**

Compensating counsel for the actual benefits conferred on the class members must be the fundamental consideration in awarding attorneys' fees, as a court is attempting to award counsel for the result achieved.  The Supreme Court has long recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). "The common fund doctrine is 'based on the equitable notion that those who have benefited from litigation should share its costs,' and that unless the costs of litigation are spread to beneficiaries of the fund they will be unjustly enriched by the attorney's efforts." *Petruzzi's Inc. v. Darling-Delaware Co.*, 983 F. Supp. 595, 603 (M.D. Pa. 1996) (quoting *Report of the Third Circuit Task Force, Court Awarded Attorney Fees*, 108 F.R.D. 237, 250 (1985)).

An attorney who creates a "common fund" or "substantial benefit" allocable with some exactitude to a definite group of persons acquires an equitable claim against that group for the

costs incurred in creating the fund or benefit.  *Sprague v. Ticonic Nat'l. Bank*, 307 U.S. 161

(1939). Under the common fund doctrine, fee reimbursement is permitted in the following

circumstances: (1) when litigation indirectly confers substantial monetary or non-monetary

benefits on members of an ascertainable class, and (2) when the court's jurisdiction over the

subject matter of the suit, and over a named party who is a collective representative of the class,

makes possible an award that will operate to spread the costs proportionately among class

members.  H. NEWBERG, ATTORNEY FEE AWARDS § 2.01 at 28-29 (1986).

Such cases as this one, therefore, are called "common benefit" or "common fund" cases,

and "[i]t is well-settled that a lawyer who recovers a common fund for the benefit of a class of

persons in commercial litigation is entitled to reasonable attorneys' fees and expenses payable

from that fund."  *Boeing,* 444 U.S. at 478-79. And, as the Supreme Court has explained, in

contrast to statutory fee shifting where fees are calculated "under the common fund doctrine … a

reasonable fee is based on *a percentage of the fund bestowed upon the class*."  *Blum v. Stenson*,

465 U.S. 886, 900 n.16 (1984) (emphasis added).

### B.    The Requested Fee of One-Third Is Fair and Reasonable

The Settlement establishes a non-reversionary common fund of $1,000,00, from which

Settlement Class Members will receive payments and Plaintiff's Counsel will receive any fee

and expense reimbursement.  The Third Circuit has identified ten factors that courts should

consider in reviewing a request for attorneys' fees in such a common-fund case.  These include:

> (1) the size of the fund created and the number of beneficiaries, (2)
> the presence or absence of substantial objections by members of the
> class to the settlement terms and/or fees requested by counsel, (3)
> the skill and efficiency of the attorneys involved, (4) the complexity
> and duration of the litigation, (5) the risk of nonpayment, (6) the
> amount of time devoted to the case by Plaintiff's counsel, (7) the
> awards in similar cases, (8) the value of benefits attributable to the
> efforts of class counsel relative to the efforts of other groups, such
> as  government  agencies  conducting  investigations,  (9)  the

> percentage fee that would have been negotiated had the case been
> subject to a private contingent fee arrangement at the time counsel
> was retained, and (10) any innovative terms of settlement.

*In re Diet Drugs Prod. Liab. Litig.*, 582 F.3d 524, 541 (3d Cir. 2009) (citing *Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 (3d Cir. 2000); *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 336-40 (3d Cir. 1998)).  The *Gunter/Prudential* factors should not "be applied in a rigid, formulaic manner, but rather a court must weigh them in light of the facts and circumstances of each case."  *Moore v. Comcast Corp.*, No. 08-cv-773, 2011 U.S. Dist. LEXIS 6929, at *12 (E.D. Pa. Jan. 24, 2011).  As demonstrated, the above factors strongly support the requested one-third fee as appropriate, fair, and reasonable.

First, the size of the fund created and number of persons benefited supports the award as over 800 individuals stand to receive nearly $600, amounts that exceed many TCPA settlements, as indicated above. Second, there has been no objections and only five exclusions to the settlement. Next, "the Third Circuit has explained that the goal of the percentage fee-award device is to ensure 'that competent counsel continue to undertake risky, complex, and novel litigation.'"  *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 747 (E.D. Pa. 2013). Here, the quality of Plaintiff's Counsel's representation of Plaintiff and the Class, as well as their skill and experience in the specialized field of consumer class action litigation and TCPA litigation, support the requested fee.

As detailed above, the case is complex legally and factually, regarding extensive briefing, first party and third-party discovery. "Courts recognize the risk of non-payment as a major factor in considering an award of attorney fees."  *Saini v. BMW of N. Am., LLC*, No. 12-cv-6105 (CCC), 2015 U.S. Dist. LEXIS 66242, at *41 (D.N.J. May 21, 2015).  Here, Plaintiff's Counsel "accepted the responsibility of prosecuting this class action on a contingent fee basis and without

any guarantee of success or award." *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 281 (3d Cir. 2009) ("Class Counsel invested a substantial amount of time and effort to reach this point and obtain the favorable Settlement.").  In prosecuting this case, counsel faced the "risks of establishing liability," as well as certifying and maintaining a certified class through judgment and any appeal.  *In re Rite Aid*, 396 F.3d 294, 304 (3d Cir. 2005). As detailed above, PALMCO is with significant defenses to this action.

The Third Circuit has also affirmed attorneys' fees constituting one-third of a settlement fund in a TCPA case that had been contested by an objector, and where the fund included a reverter provision (not present here).  *See Landsman & Funk, P.C. v. Skinder-Strauss Assocs.*, 639 F. App'x 880, 883–84 (3d Cir. 2016).  Class Counsel's request for an award of attorneys' fees of 33 1/3% of the common fund here is also well within the range of fee awards in cases across the country.  *See, e.g.*, *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 822 (3rd Cir. 1995) (in common fund cases "fee awards have ranged from nineteen percent to forty-five percent of the settlement fund" (citation omitted)); *In re Gen. Instrument Secs. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) (awarding fees of one-third in class action settlement).

Here, "[t]he entirety of the value achieved for the Class was attributable to Class counsel; no other groups, such as government agencies conducting investigations, were involved in this case." *Serrano v. Sterling Testing Sys., Inc.*, 711 F. Supp. 2d 402, 421 (E.D. Pa. 2010) (approving 33.1% fee in consumer class action). This factor supports the fee requested. Additionally, "the goal of the fee setting process is to 'determine what the lawyer would receive if he were selling his services in the market rather than being paid by Court Order.'" *In re Linerboard Antitrust Litig.*, No. 1261, 2004 U.S. Dist. LEXIS 10532, at *47 (E.D. Pa. June 2,

2004). "'[I]n private contingency fee cases, particularly in tort matters, Plaintiff's counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery.'" *Bradburn Parent Teacher Store, Inc. v. 3M*, 513 F. Supp. 2d 322, 340 (E.D. Pa. 2007) (quoting *In re Ikon Office Sols.,* 194 F.R.D. 166, 194 (E.D. Pa. 2000)).  Thus, the one-third sought here is in line with such contingency fees. Finally, "the terms of this settlement are relatively standard. In the absence of any innovative terms, this factor neither weighs in favor nor against the proposed fee request." *Med. Mut. of Ohio v. Smithkline Beecham Corp.*, 291 F.R.D. 93, 105 (E.D. Pa. 2013).

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1224-25 (3d Cir. 1995).  Plaintiff's Counsel expended a total of $12,000.45 on this case to date, the bulk of which were for mediation expenses. Paronich Decl. at ¶ 18. The remaining amounts are for filing fees, and third-party subpoena services fees. *Id.* All of the expenses were necessary and appropriate for the prosecution of this Action, and all are of the type that are customarily incurred in litigation and routinely charged to clients billed by the hour.  *Id.*  As set forth in the accompanying declaration, the expenses incurred are reasonable in the circumstances and should be approved.  *See Tavares v. S-L Distribution Co.*, No. 1:13-CV-1313, 2016 WL 1743268, at *15 (M.D. Pa. May 2, 2016).

### 10.     The Plaintiff's Requested Incentive Award Should be Approved.

"Incentive awards are not uncommon in class action litigation and particularly where ... a common fund has been created for the benefit of the entire class."  *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 334 n.65 (3d Cir. 2011) (citation omitted).  "'The purpose of these payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the

- 21 -

course of class action litigation,' and to 'reward the public service of contributing to the enforcement of mandatory laws.'" *Id.* (quoting *Bredbenner v. Liberty Travel, Inc.*, No. 09-cv-905, 2011 U.S. Dist. LEXIS 38663, at *63-64 (D.N.J. Apr. 8, 2011)).

Here, Plaintiff took steps to protect the interests of the Class and spent time pursuing the claims underlying this matter.  To start, Plaintiff's initial decision to pursue this case as a class action, and not simply seek individual damages, directly benefited the Class.  What's more, as there is no other class representative in this matter, without Mr. Abramson, the common fund established here might never have come to be. Furthermore, Mr. Abramson has prepared an affidavit, attached as <u>Exhibit 4</u>, outlining his extensive involvement in this matter, which includes:

- Mr. Abramson's investigation into each of the four telemarketing calls he received. *Id.* at ¶ 4.
- In more than one instance, his investigation also involved me giving his consent for the caller to switch his electric supplier to the company that the caller claimed to represent, so he could be certain that the telemarketing agent was not lying about the company they claimed to represent. *Id.* at ¶ 5. Such a misrepresentation has been known to happen in the deregulated energy space.
- Mr. Abramson documented his time spent on the case. *Id.* at ¶ 16.
- Mr. Abramson itemized his statutory damages had he filed an individual complaint against the Defendant, which amounts to $12,000.00 in statutory damages, an award in excess of what he seeks here. *Id.* at ¶ 7.

Class Counsel's request for an Incentive Award to Plaintiff of $10,000 is in line with incentive awards that courts have approved in comparable TCPA matters, and is in fact on the lower end.  *See, e.g.*, *Jones v. I.Q. Data Int'l, Inc.*, No. 1:14-CV- 00130-PJK-RHS, 2015 U.S. Dist. LEXIS 137209, at *5 (D.N.M. Sept. 23, 2015) ($20,000 incentive award from a $1 million common fund); *Craftwood Lumber Co. v. Interline Brands, Inc.*, No. 11-CV-4462, 2015 U.S. Dist. LEXIS 35421, at *17-20 (N.D. Ill. Mar. 23, 2015) (collecting cases and approving a $25,000 service award to TCPA class representative).

## V.   CONCLUSION

For the reasons set forth above and the entire record in this litigation, the Settlement warrants this Court's final approval, and Plaintiff's Counsel respectfully requests that the motion be granted. A Proposed Order is attached as <u>Exhibit 5</u>.

<div style="margin-left:50%">

Respectfully submitted,

<u>*/s/ Anthony I. Paronich*</u>
Anthony I. Paronich
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
(508) 221-1510
anthony@paronichlaw.com

*Attorneys for Plaintiff and the Proposed Class*

</div>

Dated: February 17, 2021

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 17, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification to all counsel of record.

<div style="margin-left:50%">

<u>*/s/ Anthony I. Paronich*</u>
Anthony I. Paronich

</div>

- 23 -